We have a motion to adjourn, a second to adjourn, a motion to adjourn, a second to adjourn, Payment in Solis versus local 234. May it please the court, your honors, I'm Michael Abati on behalf of the Secretary of Labor and I would like to reserve three minutes for a rebuttal. Your honors, the district court erred in this case when it dismissed the Secretary's action for lack of jurisdiction. Contrary to what the court held, there is nothing in the Transportation Workers Union Constitution that either requires a union member to bring a nomination challenge prior to the election or, importantly, there is nothing that forbids a union member from bringing a post-election challenge when they previously filed a pre-election challenge. In essence, the union constitution is silent on this question and case law from this court and from the Supreme Court is very clear that any ambiguities in a union constitution must be liberally construed in favor of the rank and file individual member. The district court failed to do that in this case. Instead, it credited an interpretation of the union constitution that the union never asserted until the district court in this case. This is not a case where the court was asked to defer to a longstanding interpretation of the union's constitution. Mr. Johnson was never told at any point in this case that the union believed he only permitted one challenge. In fact, the Secretary of Labor, when investigating the complaint, talked to the union and was never told that the union's view was that this was an exclusive one-and-one-challenge-only provision. That is why the statements that are quoted in our brief seem to point in the opposite direction, that the union's general counsel at the time indicated it seemed proper. So what has happened here is that the district court credited a pure litigation position of the union and threw out a challenge by a union member who behaved in good faith. Well, your opponents argue that if we were to accept the position that you're advocating on behalf of the Secretary of Labor, the result would be, in their words, absurd because what you would or could theoretically have is just a series of appeals as each person on a slate in pre-petition protests or pre-election protests and then a post-election protest and then the next person down the line could jump in and effectively extend the time for the filing of a suit indefinitely. And I take their argument to be that that can't be what the law envisions. What's your response to that? Our response is that's not our position. What we're talking about here, I think, is a default rule in a case like this where the union constitution is silent. And the default rule that we are asking for is a pretty clear one. It's that where it's not forbidden, one post-election challenge is entirely proper. We're not arguing that Johnson should be allowed to bring two, three, four, five. I'm not saying Johnson should be allowed to. I take their argument to be Johnson gets two bites at the apple and it's clearly – well, I don't know. Do you view this as two bites? He has a pre-election protest which is handled through appeal, and then there's the election, and then he files again with some additional arguments, but he files again. So we're dealing with two. And I take their position to be that if the rule were the one that the Secretary is suggesting, everybody on that slate could, in turn, try to make an argument of the sort that Mr. Johnson is making. Is there a flaw in their reasoning? Well, I mean, there are a couple. First of all, I think the rule that we are asking for here concerns Mr. Johnson and only Mr. Johnson.  They may well have challenges that they could have brought prior to or after the election. The union has it, I'll note, in its power to control this and to cap this. They could do what the union did in Local 30 and in District 19 and put a provision in their constitution or their bylaws or even their election rules, saying you must bring this sort of challenge prior to an election. They didn't do that. If you look at the union constitution here, there is no timing requirement whatsoever for these sorts of challenges, none. In Local 30, that constitution was the Teamsters Constitution, and there's a 48-hour provision in the Teamsters Constitution. They do argue that there is a provision that says they may file a complaint. Yes, Your Honor. So when you say there's no provision, there's at least the arguable four words there, that a complaint means one complaint. Well, that certainly says nothing about timing, which was the point I was just addressing, but as to whether that prohibits the post-election challenge. A complaint, could that also mean but only one complaint? Could, at some point, it be interpreted that way? I suppose the union could have done that as a historical matter of practice. Well, if it's an interpretation question, then doesn't the tie go to the member? The tie would go to the member in this case, and I think that's the exact point. The statutory case law under the LMRDA is clear that you ask, what would a reasonable rank-and-file member do in the circumstances? They're not lawyers. They're not represented by counsel. They're writing letters to their local executive board, and I will note in this case, it's the local executive board that makes the decision disqualifying the only competitor slate of candidates because of an interpretation of one rule that the international admits on this record had been inconsistently applied over time. It was within the discretion of the local, and the local executive board then applies it to disqualify one candidate and consequently the entire slate and refuses to allow substitution of candidates and thereby ensures their continued re-election. You know, the secretary's view is that was a pretty substantial violation of the act here and that that should be pursued in district court. I'll also note the inaction of the union when Johnson came forward on October 9th and files his post-election complaint. The union did not say to him, as had been done in I believe it was the District 19 case, your rights here have already been exhausted. Had they have done so, we may not be here today because, well, one of two things could have happened. Either Johnson may have just submitted the same letter to the secretary within the next 10 days and everybody concedes. That would be timely. Or possibly if the union had said even then to him, hey, you know, in our view, you don't get a second bite as they would call it. Well, you know, the secretary may well have determined that it would have been unreasonable. But they were still in time to timely file from the earlier decision if it had been rejected, if the second protest had been rejected. Had it been immediately rejected, yes. Yes, they had 10 days. They still had 10 days left. Yes, within that 10-day window Johnson could have gone. But the union, again, did nothing. They said nothing of the sort. But didn't really all they do was acknowledge receipt of the complaint? Yes, but if you were the rank and file member in these circumstances and they acknowledge receipt, you know, he might have assumed, as the case law, we've pointed out from other circuits. We give people who file notice of appeals here a receipt. It doesn't mean that we can't question the jurisdiction for them coming here in the first place. That is correct, Your Honor. Well, first of all, this Court's case law has actually said that silence can amount to acquiescence and waiver in Local 126. This Court said that. So that's an important point. But as I said at the outset here, the union, not until the district court, in this case, has ever offered the interpretation that this was, you know, a one-by-only provision. And so Johnson's activities must be judged from that standard of reasonableness. Do we have to look or shouldn't we look? Maybe it's just in terms of equity or something. At the purpose of the statute, why was the statute enacted? It was enacted to protect the rights and interests of employees. So if a protest, as the second protest was filed, and they had reason to believe they couldn't, the union, that they could not file it, or the, what's the second level, the ICA believed they couldn't file it as untimely, shouldn't they have said something to protect the employee, who still had time to file an appeal from the first place? Absolutely. The Secretary thinks they should have. If I can expand upon that, I think there are actually two competing statutory goals here, both of which point in favor of our argument. As you have said, protecting the rank-and-file member who's not a lawyer and is proceeding through these regulations as best they can based on what they say. But there's also the goal of preventing interference with ongoing union elections. The rule that is proposed by the local, and the international in this case, would require a union member to go immediately and complain upon the denial of a pre-election protest. Because of the 60-day timeline that the Secretary has for investigating such complaints, that injects the Secretary and their investigation in the middle of an ongoing union election, because the Secretary has a limited window to investigate. So it may be, in this instance, you had a dispute about being on the ballot. That may well not be cured, but in another case, you could have a dispute that could be cured by the complaining party maybe winning the election. You seem to make the argument that there's a second and alternative argument because a candidate can make a post-election complaint. Is that really something that they could do in an instance like this where they've already been knocked off the ballot? They're no longer a candidate at that point? I mean, we think it's certainly not an implausible interpretation. I don't think anything in this case ultimately turns on that, Your Honor. I think it's clear that he was denied access to the ballot. And our view is that the second protest was valid even from the first action. And therefore, we don't think that it makes a difference. You don't have to rely on that. I think you kind of begrudgingly admit that there really were two eligibility protests. There certainly are two protests to the eligibility. At one point, you call it an election protest. The second one, an election protest. But it's the same thing. And as I was saying to Judge Jordan earlier in the argument, I actually didn't get back to this point because I think there was a multi-part question. They are different, as you pointed out. The second challenge is a little broader in scope. It challenges not merely the application but the rules themselves. We don't think that that matters from the standpoint of the rule that we have proposed here. We think the sensible rule is where it's ambiguous or silent. One post-election challenge is permitted. But if this Court disagrees with that rule, it should take notice of what you've pointed out. The second challenge, as Johnson lays out in the record, is, in fact, broader. It goes to the rules about partial slates. It goes to the rules about substitution of candidates. And it goes to the historically inconsistent application of the rule about submitting these two nomination forms. And we think that this Court could well find, if it disagrees with our rule, that that's still a reason for reversing the district court. There are plenty of opportunities for that. I'll reserve the rest of my time for rebuttal if this Court has no further questions. Okay, thank you. Good afternoon. May it please the Court. My name is Bruce Bodner, and I represent Transport Workers Union Local 234. I think there's two issues that I want to focus on. One is to review a little bit the legal precedents that set the framework for evaluating the decision of the district court below in this case. In both of these cases, the Third Circuit cases, the decision in 1972 involving Steelworkers District 19, and in 1993, a similar decision by this Court involving Local 30. Now, these two decisions are very watershed decisions with respect to the very statutory provisions that are asked to be interpreted by this Court, and that were interpreted by Judge Davis. Prior to these decisions, prior to the 1972 decisions, there have been a number of district court decisions that relying upon some very general principles that were set forth in Calhoun, a Supreme Court decision, which largely focused on the fact that Title IV of the LMRDA provides post-election remedies. And there's no dispute about that. Title IV allows the secretary to file suit against the union in connection with an election only after the election has taken place. The district court decisions that preceded Hodgson and District 19 concluded from that that pre-election protests were of no consequence with respect to the statutory requirements which are mandatory as preconditions for the Department of Labor to file suit against the local union. One of those is that the member had to have exhausted their internal union remedies. Or in the alternative, the member had to file a protest, waited 90 days for a final decision, and then had a 30-day window in which to file with the Department of Labor. This Court held that in the circumstances of those two constitutions that pre-election protests triggered the statutory timeline for filing a complaint with the secretary. And I think what's most important... And that raises, well, two questions for me. I guess I'll ask the first one. Your opponents say the position that's being taken here now was never taken by the union before Judge Davis's decision. This is a brand-new argument. It's a litigation artifact. And there was nothing about these earlier decisions, Steelworkers 19 or Local 30 or Hodgson or anything else, that had you at the union thinking that's the way the LMVRA is supposed to be interpreted. I'd like you to respond to that. Well, for the union, for the Transport Workers Union, this was a case of first impression. The local for sure had never dealt with a circumstance like this. And from the International's amicus brief, they had not either. So while the law was out there and the statute was out there, this particular union had never dealt with it concretely. In a specific case, it would bring forth... How was a member to know what to do? A member could ask what to do. Well, a member did ask, in this case, in the sense that the member filed a post-election protest that was taken and nobody ever said, hey, you had your one bite, you're done. It was just said, okay, thanks. And then the time clicked away and then he's told by the union and by the district court, well, now you're out of luck. You don't get any district court review. Well, let me just say this. The letter that was initially sent to the local on October 9th after the election was improper and invalid because under the local's bylaws, a challenge to the certification of an election, which is part of the record, is not permitted to be filed with the local union. It must be filed with the International Committee on Appeals. So that's right there in the bylaws. The members should be able to read the bylaws and realize that if they want to file a post-election protest, they don't file it to the local union. That happened on October 9th. By the time the complaint was filed to the International in November, the time period for filing with the secretary had already elapsed. I guess this raises the question that I hear you're, Mr. Abate, pushing or pressing upon us, and that is how are we supposed to be approaching this case? Our case law seems to say we're supposed to approach it in a way and interpret the statute in a way that sort of gives every break, every reasonable presumption that can possibly be given to the rank-and-file member. Your discussion seems to be taking a slightly different slant than that, which is if you didn't send the piece of paper to the right group, you lose. Not only do you lose on that petition, but you lose any right to go to the district court because you should have known that your time was running and therefore you don't get to go or turn to the secretary or to the district court. Are you putting us in a position where we have to ignore our precedent that talks about giving every reasonable presumption to the rank-and-file member? No, I think every reasonable presumption should be given to the rank-and-file member so long as the presumption is a reasonable one. I mean, here we had a pre-election contest that was taken to the local executive board. It was then appealed to the International Committee on Appeals. In the meantime, the Johnson people went into federal court with counsel, and they had counsel during this entire time, and challenged what had occurred regarding their disqualification as candidates, had a full hearing before the district court, then got a decision from the International in September, were given an opportunity to provide additional information, additional facts to challenge the factual basis of that decision, provided something, but it did not satisfy the International, and their complaint was rejected. Their appeal was rejected. It was clear as day on the 19th of September that the International had rejected their arguments for being put on the ballot in this particular election. No question about that. The question that's occupying us, though, is whether the wording of Article 15 is such that it was totally unreasonable for Mr. Johnson going in there to think, my constitution gives me the opportunity to complain again after the election. That's the real question, right? Not whether he could have gone after the first, but whether he could reasonably have thought, I can still go into district court if I want to by filing this post-election protest. Isn't that the question we've got to answer? Perhaps that's one question, but I don't see how it's reasonable to conclude after you've basically contested the very issue that you sought to contest and got an answer, not only from the local but from the International, that you're going to, after the election, file basically the same complaint over the same issue. Then why did you not reject the second protest? The local did. The second protest? Yes, because the local had no right under its bylaws to be... Nobody said a word to him. They acquiesced to that. What we're talking about, see, the problem is you're talking about the local, which I represent, and is a party in this case. The International was not named as a party. The International is who purportedly the Department of Labor interviewed and entered into this record hearsay evidence about what the International's general counsel said. Okay, well, let's assume that those are hearsay and we'll put them aside. I have the two statements of O'Connor and Rosen, are those the names? Yeah. When the second protest was filed or submitted, nobody said anything, local, International. It was accepted. It was acquiesced. It was not rejected. The local did reject it. The International... No, no, no, wait a minute. had run for them to file a complaint with the Secretary on the first protest. Well, I would say actually that's not really the case because with respect to the pre-election complaint, after the election and around the time that the second protest was filed, they appealed to the International Convention the decision of September 19th that was made by the International Committee on Appeals. So by virtue of making that appeal, they still had a remedy available, an internal remedy available, which would have been decided upon at the next International Convention. Yeah, in 2010. No, that occurred this past week. No, both parties have now agreed that that 2010 issue was moot or not really an issue for us. Well, what I'm saying is at the time that they filed the second complaint, they also filed this appeal. Okay, so they didn't... literally, they were not cut off entirely from obtaining a remedy within the context of the Union. By filing the complaint with the Secretary in January, they basically abandoned, for purposes of the statute, their internal remedies. Are you suggesting the election results would not have been final until the Convention decided the appeal in 2010? The election results would have been final in the sense that under the statute and under the Constitution of the Union, the elected officers would be in charge of the local. But the International Convention, which occurred this last week, by the way, could have, if it found in favor of Mr. Johnson, overturned the election. I'm confused now, Mr. Bonner, and I apologize because I thought your argument was that he hadn't exhausted his administrative remedies, but he had not timely gone to the district court. Now I understand your argument to be he hadn't fully exhausted his administrative remedies, and I'm not sure how you can have it both ways. You really didn't have that in your brief. I mean, you've conceded that the Convention... effectively conceded in your brief... I did. I said it was moot because of how long... So now you're saying he didn't exhaust. Well, I'm saying... I agree with Judge Jordan. You're now making... That's a big moment for me, Mr. Bonner. Treasure, treasure. But you're effectively saying he didn't exhaust his remedies on the first protest, and that's not an argument that's been made before. Well, the interveners made that argument in their papers in the filing of this appeal with the district court, that they had appealed to the International Convention and therefore they hadn't exhausted their complaints. We made the argument that it was moot in the sense that there was no obligation that they had to wait that long for an answer. That's right. But I'd like to draw the Court's attention to the way in which its own precedents have been viewed by other courts, which... and including by the Secretary in other cases, where pre-election protests of election procedures or election conduct has been deemed to be sufficient to set forth the statutory clock in motion. There's a Seventh Circuit case, Reich v. Local 399, in which the Secretary went into court and argued on the basis of a pre-election protest that the time clock had run. Once that 90 days expired, the parties had the right to go to the Department of Labor and file suit in federal court. Is there any case on this point that has a Constitution similar to your locals? No, I think our Constitution... Like in these other cases, the Constitutions were even more vague about providing a remedy for a protest over a nomination. In the Seventh Circuit case that I just referenced, all it said in their Constitution... There was no specific procedures in the Constitution for protesting the election of officers at all. The protests were made on some more general grounds about misconduct on the part of officers prior to the election. The 90 days elapsed, and the Secretary argued that that pre-election protest was sufficient to trigger the statutory clock and give her jurisdiction. The same thing happened in the case Hall v. Marshall, the Eastern District case in which there was... Let me stop you for a second. When you say that's enough to trigger and give her jurisdiction, that doesn't seem to be speaking to the central point here. I suppose everybody, including Mr. Abate, would agree that if Mr. Johnson had wanted to, he could have filed something with respect to the pre-election protest that made its way all the way through. But that's not really the question we have to deal with. Isn't the question we have to deal with whether the Union Constitution itself opened the possibility to this rank-and-file member that I do get two bites at the apple. This isn't like a court where race judicata kicks in. Unions might have a perfectly good reason for wanting to take a second crack at it, and they're giving me a second crack at it so I can go in and the clock does start again. Isn't that the point that you have to speak to and we have to wrestle with? Well, I think the Constitution is clear that it is permitted under that article a complaint may be filed, a single complaint may be filed with respect to the denial of someone's right to run in a Union election. You just said before. Either before or after the election. You said a moment ago that the other constitutions of which you're aware are even more vague than ours is. Right, in other words, ours specifically... for your Constitution that would obviate this happening again and be a model for other constitutions in the future. Your Honor, I represent a local union. You're speaking of an international Constitution. I didn't mean you, the local. Well, okay, the local. Neither I nor the local has the ability to do that. We all have to live under the framework of that international Constitution. I, myself, when I was a member of this local was before this court in this same predicament where we as members or even executive board members of the local had the belief that the Constitution meant one thing and when we came into court we were told by this court that no, what you believe and even though however reasonable your belief may be the international determines what the Constitution means, not the member. That's a different question, though. If the international has interpreted its own Constitution but that's not the question we had before us. Well, the international had never had an opportunity to address this particular issue. It did in its amicus brief. Okay, thank you. Isn't the international's response back to Mr. Johnson even more support than for his position since aren't they the ones we should look to as to how they interpret their Constitution? You mean their response following his... No, it basically says, yeah, we have your complaint. Yeah, but as they said in their brief they just accepted the complaint as having been filed with the proper party which is the Secretary-Treasurer of the international and then it was sent to the Committee on Appeals. They never rendered a decision about his second protest and that was beyond the control of the local to have to influence... It seems to me under that set of circumstances that if you don't know what the Constitution says as counsel that that union member would have thought I've effectively protested this post-election and at least my claim's still alive. Well, it's not that I don't know what the Constitution... I have my own opinions as well. That's what I meant. And so does the member, right? But what I'm suggesting to you is it's the international... It's not the Department of Labor that gets to interpret the Constitution of the Transport Worker Union which is basically a lot of the argument that's been made here by counsel that they have the correct interpretation. I guess what you're saying the international now is starting to interpret this. No, the international... But it never did before, you said. It didn't because the issue was... It was never confronted with this particular issue. Okay, so... And then when it was faced with this case it produced an amicus brief to explain its interpretation. Meanwhile, the argument was made that the protest was untimely based on... The local made that argument, yes, before the district court. I think we understand your position. Rebuttal? Thank you very much. Your Honor, I have a couple of very brief factual points I'd just like to address in response to what co-counsel just said. First of all, there was a citation in the brief in here today at the podium to a other district court litigation about this election suggesting that the Johnson slate had their claims heard. That's not correct. That was a Title I LMRDA claim. Under Title I, private members can bring LMRDA claims to try to enjoin a union election, but it's limited solely to whether or not the rules are being enforced in a discriminatory manner. And all that the judge decided there was the rules were not being allegedly enforced in a discriminatory manner. So it dismissed the suit and said, this is properly the basis of a Title IV suit to be filed later on by the Secretary. That's the suit we're trying to bring now. So it is not correct to say this was litigated. Second of all, Judge Barry, I think you're exactly right if you look at the record that the international or the local never rejected the October 9th filing. In fact, at page B55 of the appendix, Johnson's second letter notes explicitly, hey, I submitted this to the local and they took no action on it. So it's not correct to say that they immediately rejected it thereafter. And finally, I did not address those other two Third Circuit cases in my opening argument, but I would just like to say very briefly that our position today does not quarrel with them. We agree with them. Teamsters Local 30 was a very, very different question than this one. That question was, if it's admittedly clear that the union member had exhausted before the election their remedies, should we make them go and file a post-election complaint? This court held, no, we don't believe you should. That's a different question than this one, which is, is the second complaint forbidden because the first one was made? Separate question. And then we think District 19, again, does not control because there, there was an express requirement that any challenge to nomination procedures be made 45 days before the election. It was improper to file a protest after the election in light of that rule. We don't contest the validity of such rules and we think that in the future, unions like TWU should write those into their constitution if they believe that protests need to be done beforehand. The LMRDA is set up to favor post-election challenges. In this case, the international admitted, I believe it was page 46 of the record, that it was deciding the appeal in a hurried manner and didn't have all the facts before it. And I think that just speaks to the fact that this scheme works better if you can have considered time for judgment after the fact. Unless this court has further questions? I submit. Thank you. Thank you very much. We will take the case under review.